UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CONTINENTAL INSURANCE COMPANY,

                Plaintiff,                              **REPORT AND
                                                                           RECOMMENDATION**

                -against-                               07-CV-3821 (NGG) (ALC)

HUFF ENTERPRISES, INC., HUFF ROOFING,
INC., ROCHDALE VILLAGE, INC., CARLISLE
SYNTEC SYSTEMS, AND COASTAL ATLANTIC
ASSOCIATIONS, INC.,

                Defendants.
------------------------------------------------------------X

Plaintiff Continental Insurance Company, through counsel, brings this action against Huff Enterprises, Inc., Huff Roofing, Inc. (collectively "Huff"), Rochdale Village Inc., and Coastal Atlantic Associations, Inc.[1] (collectively "Defendants"), seeking a judicial determination that it has no coverage obligation to any of the Defendants under its insurance contracts in connection with the underlying action entitled *Rochdale Village, Inc. v. Huff Enterprises, Inc. a/k/a Huff Roofing, Inc., Carlisle Syntec Systems, and Coastal Atlantic Ass'ns, Inc.*, Index No. 14693/94, New York State Supreme Court, Queens County (the "*Rochdale* action").

I.      Background

A. The *Rochdale* Action

Defendant Rochdale Village Inc. ("Rochdale") is a New York State housing corporation consisting of approximately 5,860 dwelling units for low-income families. (Mastropieri Decl., Feb. 21, 2008, Ex. A ¶¶ 1-2.) In or about 1989, Rochdale planned to repair the roofs of its buildings and solicited competitive bids from roofing contractors. (Mastropieri Decl.,

---

[1] Plaintiff commenced this action against Carlisle Syntec Systems ("Carlisle"), but Carlisle was voluntarily dismissed pursuant to Fed.R.Civ.P. 41(a)(1) on March 26, 2008. (Docket Entry No. 21.)

1

Ex. A ¶¶ 7-8.) The bids had to be in accordance with the specific plans and drawings prepared by Rochdale's architects. (Mastropieri Decl., Ex. A ¶ 8.) Huff is a roofing corporation and it submitted a bid to Rochdale to repair and/or replace the roofs of Rochdale's buildings. (Mastropieri Decl., Ex. A ¶ 10.) In its bid, Huff said that it would use Defendant Coastal Atlantic Associations ("Coastal") as the distributor of Carlisle Syntec Systems' ("Carlisle") roofing products. (Mastropieri Decl., Ex. A ¶ 10.) Rochdale accepted Huff's bid and retained Huff to repair the roofs of its buildings, with the understanding that Huff would replace the roofs in accordance with the specifications, drawings, and details outlined in the contract between Huff, Coastal, Carlisle, and Rochdale. (Mastropieri Decl., Ex. A ¶¶ 11-12.) Subsequently, Huff replaced eight roofs on Rochdale's buildings and represented to Rochdale that it constructed the roofs in accordance with the plans, drawings, specifications, and details of the parties' contract. (Mastropieri Decl., Ex. A ¶ 14.) Rochdale paid Huff $358,575.18 for replacing the roofs. (Mastropieri Decl., Ex. A ¶ 14.)

Rochdale alleges that in or about October of 1991, water began to leak through the roofs and into the apartments of its units. (Mastropieri Decl., Ex. A ¶ 15.) During this time, Rochdale learned that Huff did not use materials specified in the contracts, but instead, used materials that Defendant Carlisle's warranty did not cover. (Mastropieri Decl., Ex. A ¶ 15.) Rochdale also discovered that Defendant Carlisle's materials were either improperly installed or deteriorating to the point where water was penetrating to cause irrevocable damage to the roofs. (Mastropieri Decl., Ex. A ¶ 15.)

Rochdale commenced a breach of contract action in New York State Supreme Court, Queens County in 1994, alleging that Defendants Huff, Coastal, and Carlisle failed to construct and install the buildings' roofs at the Rochdale Village Housing Project Program in a workmanlike manner and failed to supply the proper materials as specified in the contract. (Mastropieri

Decl. ¶¶ 8-10, Ex. A.) The *Rochdale* action further alleges that extensive repair and replacement of the work is needed, and that Rochdale will suffer future damages and will be required to continue to repair the defects in the roofs due to the breach of contract by the Defendants Huff, Coastal, and Carlisle. (Mastropieri Decl. ¶ 11, Ex. A.)[2]

### B. Defendants' Failure to Appear

Plaintiff Continental Insurance Company commenced a declaratory judgment action against Defendants in this district on September 12, 2007, providing Huff with a courtesy interim defense for the underlying *Rochdale* action pending the resolution of the coverage issues. (Mastropieri Decl. ¶ 6.) In September 2007, Plaintiff personally served Defendants with the summons and complaint. (Docket Entry Nos. 3-7.) Defendants failed to respond to the Complaint or appear in the action as required by Fed.R.Civ.P. 12. On January 8, 2008, Plaintiff filed a request that a certificate of default be entered against Defendants. (Docket Entry No. 13.) The clerk of court noted the default on January 31, 2008. On March 21, 2008, the Honorable Nicholas G. Garaufis granted the default judgment and referred the issue to the Honorable Joan Azrak for a report and recommendation regarding Plaintiff's request for injunctive relief. (Docket Entry No. 22.) Plaintiff subsequently moved to stay the default judgment and made a motion for summary judgment, requesting that the Court issue an order stating that it has no contractual obligations to provide insurance coverage for Defendants. (Docket Entry Nos. 25, 26, 35.) The Court denied Plaintiff's motion for summary judgment and referred the matter to me for a report and recommendation on injunctive relief. (Docket Entry No. 36.)

I gave Defendants an opportunity to provide submissions to the Court regarding the default motion. (Docket Entry No. 37.) The Court's records show that Defendants never appeared in

---

[2] The Queens County court records indicate that there has been no activity in the *Rochdale* action since 2001 and that the action is currently stayed.

this action, responded to the Complaint, or submitted any opposition to Plaintiff's motion for a default judgment.[3]

## II. Discussion

Pursuant to the Federal Rules of Civil Procedure, the court shall enter a default judgment against a party that has failed to plead or otherwise defend an action brought against it. *See* Fed.R.Civ.P. 55(b)(2). Defendants failed to respond to Plaintiff's complaint as required by Fed.R.Civ.P. 12. Accordingly, an entry of default is proper.

A defendant's default is an admission of all well-pleaded allegations in the complaint except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). "[I]t remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Leider v. Ralfe*, No. 01-3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (quoting *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y.2000)). Even though a defendant may fail to appear in an action, it is the plaintiff's burden to establish liability. *See Greyhound Exhibitgroup*, 973 F.2d at 159.

If the court finds that the unanswered complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). The court has the discretion to require an evidentiary hearing or to rely on written submissions in determining damages. *See* Fed.R.Civ.P. 55(b) (2); *see also Chun Jie Yin v. Kim*, No. 07-1236, 2008 WL 906736, at *2 (E.D.N.Y. Apr. 1, 2008) (collecting cases).

---

[3] I did not expect Huff to appear because it was discharged in bankruptcy in 2003. (Pl. Mot. Summ. J., Dec. 18, 2008, Ex. C.)

4

## A. Continental Insurance Contracts

Plaintiff issued Huff two insurance contracts with a policy period of February 28, 1989 to February 28, 1990 and February 28, 1990 to February 28, 1991. (Mastropieri Decl. ¶ 12.) These insurance contracts are commercial general liability insurance policies where Plaintiff agrees to "pay those sums that insured becomes legally obligation to pay as damages because of 'bodily injury' or 'property damages' to which this insurance applies." (Pl. Mot. Summ. J., Ex. 4.) The insurance policies apply to "bodily injury" or "property damage" only if:

1. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

2. The "bodily injury" or "property damage" occurs during the policy period.

The insurance contracts define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." They define "property damage" as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

The contracts also have a standard notice provision. They require the insured to notify Plaintiff "as soon as practicable" of any "occurrence" or if "a claim is made or 'suit' is brought against any insured."

## B. Insurance Contracts Bar Coverage

Plaintiff argues that it owes no coverage for the *Rochdale* action because the coverage periods of the insurance contracts fall outside the date of the incident. It further argues that it owes no coverage to Defendants because the Continental insurance contracts bar coverage for faulty workmanship and that there has been no "occurrence" as defined by the policies.

5

Under New York law, an insurer's duty to defend is "exceedingly broad, which is in the interest of the insured." *Colon v. Aetna Life & Casualty Ins. Co.*, 66 N.Y.2d 6, 8, 494 N.Y.S.2d 688, 484 N.E.2d 1040 (1985). An insurer must defend a claim whenever the complaint suggests a reasonable possibility of coverage, regardless of the merits of the action. *See Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 65, 571 N.Y.S.2d 672, 575 N.E.2d 90 (1991). It is the insured's burden to prove that the insurance contracts cover the loss. *See Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000) (collecting cases).

In the instant matter, Plaintiff maintains that it is providing Huff with a courtesy interim defense for the *Rochdale* action pending the resolution of the coverage issues in this instant action. (Mastropieri Decl. ¶ 6.) Plaintiff argues that because the *Rochdale* incident occurred in October 1991, the "injury-in-fact" happened after the termination of the insurance contracts. However, I find that the more appropriate inquiry is not when the "injury-in-fact" occurred, but whether there has been an "occurrence" at all as contemplated by the policies.

Case law indicates that there was no such "occurrence" because the *Rochdale* action is an action in contract law, thus relieving Plaintiff, in part, of its duty to indemnify Defendants. *See Transportation Ins. Co. v. AARK Const. Group, Ltd.*, 526 F. Supp. 2d 350, 357 (E.D.N.Y. 2007); *Amin Realty, L.L.C. v. Travelers Property Cas. Co.*, No. 05-195, 2006 WL 1720401, at *3 (E.D.N.Y. Jun. 20, 2006). The crux of the complaint in the *Rochdale* action is that Huff failed to abide by the contract entered into between the parties. Because of this breach of contract, Rochdale suffered damages and wants to be compensated for the breach. Thus, an "occurrence" of property damage under a commercial generally liability policy cannot exist where a general contractor's "negligent acts only affect[ ] [the property owner's] economic interest in the building." *See George A. Fuller Co. v. U.S. Fidelity and Guar. Co.*, 200 A.D.2d 255, 259, 613 N.Y.S.2d 152 (1st Dep't 1994) (finding that the insurer was not obligated to provide a defense to

the plaintiff in the underlying action where plaintiff was sued for failing to meet its contractual obligations).

As courts have previously held, to hold Plaintiff responsible for Huff's breach of contract would convert Plaintiff's role into a surety, a position that Plaintiff never contemplated nor for which it contracted. *See Transportation Ins. Co.*, 526 F. Supp. 2d at 357 (granting declaratory relief because the commercial general liability policy did not provide coverage for property damage arising from the collapse of a garage); *Amin Realty*, 2006 WL 1720401, at *3; *Bonded Concrete, Inc. v. Transcontinental Ins. Co.*, 12 A.D.3d 761, 762, 784 N.Y.S.2d 212 (3d Dep't 2004). Moreover, if the damage to be remedied is faulty work or the product itself, rather than an injury to a person or other property because of the faulty work product, the alleged act is not an "occurrence" under standard insurance contracts. *Royal Ins. Co. of America v. v. Ru-Val Elec. Corp.*, No. 92-4911, 1996 WL 107512, at *2 (E.D.N.Y. Mar. 8, 1996); *see also Amin Realty*, 2006 WL 1720401, at *4 (holding that the insurer had no duty to indemnify because the damages did not arise from an "occurrence," but from the insurer's faulty work product); *Bonded Concrete*, 12 A.D.3d at 762 (affirming that no coverage was owed because the damages sought were the costs of correcting the defect, not damage to property other than the completed work itself). Here, the complaint in the *Rochdale* action primarily seeks damages to repair and/or replace its roofs. *See J.Z.G. Resources, Inc. v. King*, 987 F.2d 98 (2d Cir. 1993) (declining to hold the insurer responsible when the remedy alleged is the repair of the faulty construction).

It is also settled by New York courts that commercial general liability insurance policies do not contemplate covering incidents arising out of defective work product. *See George A. Fuller Co.*, 200 A.D.2d at 259 (holding that the insurance "policy was never intended to provide contractual indemnification for economic loss to a contracting party because the work product contracted for is defectively produced"); *Bonded Concrete*, 12 A.D.3d at 762 (holding that the

7

insurer is not obligated to indemnify the plaintiff for supplying defective concrete under the commercial general liability policy). Accordingly, I find that the Continental insurance contracts do not cover the incident and damages alleged in the *Rochdale* action.

## C. Untimely notice

Even, assuming *arguendo*, that there was an "occurrence" under the insurance contracts, Plaintiff is still relieved from liability because Huff breached the notice provision since it did not provide Plaintiff with timely written notice of the incident. Where a liability insurance policy requires that an insured provide notice of an occurrence "as soon as practicable, such notice must be accorded the carrier within a reasonable period of time." *Tower Ins. Co. of New York v. Lin Hsin Long Co.*, 50 A.D.3d 305, 307, 855 N.Y.S.2d 75 (2d Dep't 2008) (internal quotation marks and citation omitted); *Atlantic Cas. Ins. Co. v. C.A.L. Const. Corp.*, No. 06-4036, 2008 WL 2946060, at *7 (E.D.N.Y. Jul. 30, 2008). Under New York law, compliance with a notice-of-occurrence provision is a condition precedent to the insurer's obligation to defend or indemnify the insured. *See White v. City of New York*, 81 N.Y.2d 955, 957, 615 N.E.2d 216, 598 N.Y.S.2d 759 (N.Y. 1993); *Paramount Ins. Co. v. Rosedale Gardens, Inc.*, 293 A.D.2d 235, 239, 743 N.Y.S.2d 59 (1st Dep't 2002). Absent a legitimate excuse, the failure to comply with the notice condition vitiates coverage. *See Transportation Ins. Co.*, 526 F. Supp. 2d at 358-60 (finding that the insurance company was not required to provide coverage in part because the insured failed to timely file a notice of occurrence).

Here, the insurance contracts have a clear notice requirement. Huff failed to abide by the requirement and no Defendant made Plaintiff aware of the incident until sixteen years later when Rochdale's counsel sent Plaintiff a letter. To date, neither Huff nor Defendant Coastal has provided written notice though they were served with the *Rochdale* action in 1994. *See Paramount Ins. Co.*, 293 A.D.2d at 239-40 ("The duty to give notice arises when, from the

8

information available relative to the accident, an insured could glean a reasonable possibility of the policy's involvement."). Defendant Rochdale waited sixteen years after the incident to give Plaintiff notice. Accordingly, I find that Huff failed to give Plaintiff reasonable notice of the *Rochdale* action as contemplated by the insurance contracts. Based on this conclusion, I recommend that Plaintiff is not required to indemnify Defendants for the incident and damages arising in the *Rochdale* action.

### III. Conclusion

For the reasons set forth above, I respectfully recommend that the Court grant Plaintiff's request for a judgment declaring that it owes no coverage for the underlying construction defects claims to any of the Defendants.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 6 and 72 of the Fed.R.Civ.P., the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the clerk of the court. Failure to file timely objections will preclude appellate review of any order of judgment that will be entered.

**SO ORDERED**

**Dated: June 21, 2010**
      **Brooklyn, New York**

                              s/Andrew L. Carter, Jr.

                              **HONORABLE ANDREW L. CARTER, JR.**
                              **UNITED STATES MAGISTRATE JUDGE**